Filed 9/15/16  In re A.R. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re A.R., a Person Coming Under the Juvenile Court Law. | C078891 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>E.J.,<br><br>Defendant and Appellant. | (Super. Ct. No. J06267) |

Appellant E.J., mother of the minor A.R., appeals from the juvenile court's order terminating her parental rights and freeing the minor for adoption.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  She contends the juvenile court erred in finding that the beneficial parental relationship exception to adoption did not apply.  We shall affirm.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

# I.  BACKGROUND

Minor A.R. was born in April 2012.  Although she was full term, she weighed less than four pounds at birth, had placenta previa, and was born with symptoms of fetal alcohol syndrome.  Mother admitted drinking alcohol during her pregnancy.  For three months after the minor's birth, mother agreed to participate in voluntary family maintenance.  Thereafter, the case was closed.

On March 28, 2013, eight months after voluntary services were closed, the minor was taken into protective custody.  Mother had been intoxicated, unable to maintain her balance, and dropped the minor twice to the ground, causing the minor to sustain injury to her head.  Mother was charged with public intoxication and felony child abuse.

On April 2, 2013, the San Joaquin County Human Services Agency (the Agency) filed a section 300 petition on behalf of the minor.  In addition to allegations relating to the March 28, 2013, incident, the petition alleged that mother had an extensive history of substance abuse, primarily alcohol, which had resulted in the removal and termination of services for three of the minor's half siblings, and the termination of parental rights to a fourth half sibling.

The juvenile court sustained the allegations in the petition.  Mother, who had been incarcerated since the minor was placed into protective custody, was released from incarceration on July 19, 2013.  There was a criminal protective order in effect, so mother was not able to visit with the minor.

On August 8, 2013, the Agency filed a disposition report recommending mother be bypassed for reunification services pursuant to section 361.5, subdivision (b)(10) [termination of reunification services with half siblings], and (11) [termination of parental rights for half siblings], as she had failed to make reasonable efforts to treat her ongoing and long history of substance abuse.

The disposition hearing commenced on November 4, 2013.  Mother testified regarding her previous efforts in treatment programs, her relapses, and her current efforts

2

in treatment. The disposition hearing was continued to allow for additional evidence and the juvenile court authorized mother to begin supervised visitation, once per week, to commence after she got the criminal protective order lifted.

On December 2, 2013, the Agency requested mother also be bypassed for services pursuant to section 361.5, subdivision (b)(13) [resisted prior court-ordered treatment]. At the continued disposition hearing on December 12, 2013, it was reported that mother had been visiting the minor weekly. The court declined to order an increase in visitation unless, and until, it made a determination on the petition to bypass mother for services, and continued the matter again.

Subsequently, on February 6, 2014, the juvenile court declared the minor a dependent child of the court and denied mother reunification services pursuant to section 361.5, subdivisions (b)(10) and (11). On April 22, 2014, mother filed a section 388 petition for modification of the February 6, 2014, order denying her reunification services. In it, she alleged that new information showed she was bonded to the minor, was committed to maintaining her sobriety, had made progress to demonstrate she could provide the minor a safe home, and that reunification services would provide the minor an opportunity to return to her custody. The juvenile court summarily denied mother's petition stating there was no prima facie evidence to support the statements of changed circumstance, and that, at best, the circumstances were changing.

On October 2, 2014, mother filed a second petition for modification, seeking modification of the February 6, 2014, disposition order. She again contended that new information showed she was bonded to the minor, was committed to maintaining her sobriety, had completed services, and had resolved the issues that brought her before the

court. Mother sought return of the minor. On November 12, 2014, the juvenile court summarily denied mother's petition.[2]

The section 366.26 hearing took place on February 6, 2015. Mother raised the beneficial parent-child relationship exception to the preference for the permanent plan of adoption under section 366.26, subdivision (c)(1)(B)(i), arguing the benefit to the minor of maintaining her relationship with the mother outweighed the benefit she would receive from adoption. Although mother testified that she believed termination of parental rights would cause the minor severe emotional detriment and serious separation anxiety, there was no corresponding evidence from any other witness or report under consideration, and there is no evidence that a bonding study was done.

Mother had been unable to visit with the minor for eight months due to her incarceration and the restraining order then in place, but since November 2013 had participated in weekly supervised visits. The minor's four half siblings also attended half of the mother's visits with the minor. There had been no concerns regarding the visits and the logs indicated mother interacted with the minor appropriately and was affectionate with the minor. The minor was comfortable with mother and the half siblings. At the conclusion of visits, the minor sometimes cried. The social worker testified that although the mother was "very good" with the minor, the minor was "very bonded" to the foster mother.

At the conclusion of the section 366.26 hearing, the juvenile court found that although there appeared "from the testimony" to be a connection between mother and the

---

[2] Mother appealed from the November 12, 2014, order summarily denying her petition and, on October 28, 2015, this court issued an opinion in case number C077907 reversing the summary denial and ordering the juvenile court to hold a hearing on mother's petition. We take judicial notice of our own file in case number C082123 for the purpose of noting that the juvenile court subsequently denied mother's petition. (Evid. Code, §§ 452, subd. (d), 459.)

4

minor, there was no evidence that terminating parental rights would be detrimental to the minor. Accordingly, parental rights were terminated and the minor freed for adoption.

## II. DISCUSSION

Mother contends the juvenile court erred by finding the beneficial parental relationship exception to adoption did not apply. We discern no error.

At a hearing under section 366.26, if the juvenile court finds, as it did here, that a minor is likely to be adopted, the court must select adoption unless under section 366.26 "[t]he court finds a compelling reason for determining that termination would be detrimental to the child" under at least one of six exceptions. (§ 366.26, subd. (c)(1)(B).) Under this provision, "the court must order adoption and its necessary consequence, termination of parental rights, unless one of the specified circumstances provides a compelling reason for finding that termination of parental rights would be detrimental to the child. The specified statutory circumstances—actually, *exceptions* to the general rule that the court must choose adoption where possible—'must be considered in view of the legislative preference for adoption when reunification efforts have failed.' " (*In re Celine R.* (2003) 31 Cal.4th 45, 53.) " 'Adoption is the Legislature's first choice because it gives the child the best chance at [a full] emotional commitment from a responsible caretaker.' " (*Ibid.*, quoting *In re Jasmine D*. (2000) 78 Cal.App.4th 1339, 1348 (*Jasmine D.*).)

The parent has the burden of establishing by a preponderance of the evidence that a statutory exception to adoption applies. (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 998; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 809.) The Agency need not establish that the minor would *not* benefit from continued parental contact. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466 (*Angel B.*).)

To establish that the beneficial parental relationship exception to adoption applies, the parent must show that termination of parental rights would be detrimental to the minor because "[t]he parents have maintained regular visitation and contact with the child

and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) "Because a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement." (*Jasmine D., supra*, 78 Cal.App.4th at p. 1350.) When the juvenile court rejects an exception to adoption, we review the court's finding deferentially. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315 [whether standard of review deemed substantial evidence or abuse of discretion, broad deference to lower court required]; *Jasmine D., supra,* at p. 1351 [abuse of discretion]; *In re Autumn H.* (1994) 27 Cal.App.4th 567, 576 (*Autumn H.*) [substantial evidence].)

To prove that the beneficial parental relationship exception applies, "the parent must show more than frequent and loving contact, an emotional bond with the child, or pleasant visits—the parent must show that he or she occupies a parental role in the life of the child." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527.) Moreover, it is not enough simply to show "some benefit to the child from a continued relationship with the parent, or some detriment from termination of parental rights." (*Jasmine D., supra*, 78 Cal.App.4th at p. 1349.) "[T]he parent must show that severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed." (*Angel B., supra*, 97 Cal.App.4th at p. 466.) The natural parent-child relationship must be proven to " 'promote[ ] the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' " (*In re S.B.* (2008) 164 Cal.App.4th 289, 297, quoting *Autumn H., supra*, 27 Cal.App.4th at p. 575; accord, *Jasmine D., supra,* at p. 1345.) " 'In other words, the court balances the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and the sense of

6

belonging a new family would confer.' " (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 953, quoting *Autumn H., supra*, at p. 575.)[3]

Here, the minor had spent only the first 11 months of her life with mother. After that, mother was absent from the minor's life for eight months. Once mother began visiting, in November 2013, although she visited weekly, she never progressed beyond supervised visits. Other than mother's testimony, there was no evidence of a parent-child bond between mother and the minor. Even if we were to assume a bond, as we have discussed above, there is no evidence mother occupied a parental role in the minor's life, which is required to show the parental relationship exception. (See *In re I.W., supra,* 180 Cal.App.4th at p. 1527.)

On this record, there is simply no evidence of determent to the minor from termination of mother's parental rights sufficient to establish the beneficial parental relationship exception. Despite the evidence that mother's visits were appropriate, and she was clearly making an effort to connect with her child, she did not carry her burden to show detriment to her child if she were no longer the legal parent. Although the minor did cry on occasion at the end of visits, she was strongly bonded to the foster mother and easily transitioned after visits. The foster mother reported that the minor did not want to leave her at the beginning of visits and the minor's behavior after the visits was "off balance and grouchy."

---

[3] The above standard of proof set forth in *Autumn H., supra*, 27 Cal.App.4th 567 is well established. Mother argues that *Autumn H.* and its progeny misconstrue the statutory requirement, and urges this court to reconsider the definition of "benefit" so as not to require the balancing test. The court in *Jasmine D., supra*, 78 Cal.App.4th 1339 thoroughly examined this same contention and concluded that *Autumn H.* and its progeny properly interpreted the parent's burden in establishing the beneficial parental relationship exception under section 366.26, subdivision (c)(1)(A). (*Jasmine D., supra*, at pp. 1348-1350.) We decline to revisit the argument here.

The minor was happy and well-adjusted in her prospective adoptive home, where she has been living since April 2013. The minor was a client at Valley Mountain Regional Center and required care with several medical specialists (i.e., neurologists, geneticists, gastroenterologists and ophthalmologists). She had been diagnosed with significant growth retardation, dysmorphic features, and global delays. The foster mother provided for the minor's needs and the minor had made significant progress in her care. Her speech had improved and she was more interactive.

While the minor enjoyed visits with mother, the minor's interest in permanence and stability had to control at this stage of the proceedings. The juvenile court reasonably found that that interest would best be served by adoption and that the benefit of maintaining the child-parent bond did not outweigh the minors' interest in gaining a permanent home through adoption. Substantial evidence supports the juvenile court's finding that the beneficial parental relationship exception to adoption did not apply.

## III. DISPOSITION

The orders of the juvenile court are affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

NICHOLSON, Acting P. J.

/S/

_____

DUARTE, J.

8